**H. R. GIBSON, Sr., d/b/a Gibson Products Company, Plaintiff-Appellant,**

v.

**Clinton E. JEFFERS, Commissioner of Agriculture, State of Colorado, Defendant-Appellee.**

No. 72–1405.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 11, 1973.

Decided May 3, 1973.

Bardwell D. Odum and Robert E. Rader, Jr., Dallas, Tex., for plaintiff-appellant.

Russell P. Kramer, Sp. Asst. Atty. Gen. and James K. Kreutz, Asst. Atty. Gen. (Duke W. Dunbar, Atty. Gen., and John P. Moore, Deputy Atty. Gen., Denver, Colo., on the brief), for defendant-appellee.

Before BREITENSTEIN, HILL and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

Plaintiff-milk distributor appeals dismissal of his declaratory judgment[1] complaint by the federal district court of Colorado for lack of jurisdiction. The complaint was instituted to determine plaintiff's rights under the Colorado Milk Marketing Order issued by appellee Commissioner of Agriculture.

Since 1966 appellant, a Texas citizen, has been engaged in the business of buying milk and milk products in the State of Oklahoma for resale to retail outlets located in Colorado. In the latter part of January, 1971, the Commissioner of Agriculture advised appellant that his business of selling milk and milk products was subject to regulation by Docket A–20, State of Colorado, Department of Agriculture, Marketing Order to Pro-

---

1. 28 U.S.C. § 2201.

mote and Regulate the Marketing of Milk and Milk Products in the State of Colorado, as amended January 15, 1971. This order required in part that distributors file a schedule of prices, discounts and rebates with the Commissioner of Agriculture at least thirty days before offering these commodities for sale in Colorado.

Appellant shortly thereafter filed with the Commissioner a schedule of prices, discounts and rebates; but nevertheless on March 9, 1971, appellant was served with a temporary restraining order prohibiting him from selling any milk or milk products in Colorado until thirty days after the filing of a "legal" schedule of prices, discounts and rebates. Three days later a second temporary restraining order was served on appellant restraining him from selling milk or milk products until he had followed the Colorado Milk Marketing Order or until further order of the court. On the same date as issuance of the second temporary restraining order, appellant received a letter from the manager of the Colorado Milk Marketing Board acknowledging receipt of the schedule of prices, discounts and rebates, but refusing to approve the schedule for the normal 30-day waiting period. On March 19, 1971, a Colorado district judge issued a temporary injunction at appellee's request prohibiting and enjoining appellant from selling or offering for sale milk products in the State of Colorado until April 7, 1971, or until further order of the court. After finding that appellant was not selling below cost, appellee advised the court of such fact and the temporary injunction was terminated on April 5, 1971.

Appellant's problems with the Commissioner of Agriculture were not over. Although his schedule had been approved, the approval was limited to marketing areas I, II, III, VII and IX. On July 14, 1971, appellee informed appellant that no schedule of prices was on file or approved for distribution of milk and milk products in marketing area VI. Appellant filed a second schedule of prices with applicability to area VI even though his first schedule filed was intended for use throughout the State of Colorado. Appellee thereafter changed his course of attack and obtained a preliminary injunction on August 26, 1971, prohibiting appellant from selling and distributing milk until appellant's handler in the State of Oklahoma filed a schedule of prices, discounts and rebates which was approved by the Commissioner of Agriculture.[2]

As a result of appellee's exertion of authority under Docket A–20, appellant was prevented from selling milk to retail outlets in Colorado from March 9, 1971, to April 5, 1971, and was prohibited from selling milk in area VI from August 23, 1971, to October 11, 1971. Needless to say, appellant feels the Commissioner's interpretation of his authority under Docket A–20 is strained and in violation of the law.

During the time appellant was enjoined by a state court from selling milk in Colorado, he filed suit in the United States district court seeking monetary damages against the Colorado Commissioner of Agriculture, and a temporary restraining order, a preliminary injunction and a permanent injunction prohibiting the Commissioner from enforcing Docket A–20. Appellant claimed he was damaged in the amount of $36,000. This figure was arrived at by taking his gross revenue lost for every week he was prohibited from doing business as a result of appellee's unlawful interpretation of Docket A–20. The weekly gross

2. Appellee thereafter requested a permanent injunction against Gibson until its handler in Oklahoma filed the proper schedules. The Colorado district court ruled it was without jurisdiction over the handler and refused to grant the injunction. On appeal the Colorado Supreme Court affirmed the lower court decision on the ground that Gibson's handler in Oklahoma did not have sufficient contact with Colorado to invoke in personam jurisdiction. Colorado v. Gibson, 508 P.2d 374 (Colo.1973).

revenue was $9,000 and from this amount appellee earned gross profits of approximately $2,500. During the four weeks he was enjoined from selling milk in Colorado, appellant allegedly suffered a loss of over $10,000 in gross profits.

On the merits of the case appellant argued that Docket A–20 as interpreted by appellee unconstitutionally burdened interstate commerce in violation of Article 1, Section 8, Clause 3, along with being an impost or duty on imports in violation of Article 1, Section 10, Clause 2. Appellant further charged that Docket A–20 as applied by appellee deprived him of his property without due process of law and therefore violated the Fourteenth Amendment to the United States Constitution. Finally, appellant alleged that as Congress has preempted the field of interstate commerce, appellee's enforcement of Docket A–20 violated the Interstate Commerce Act, Title 49 U.S. C.

The United States district court held that jurisdiction might properly be invoked under 28 U.S.C. §§ 1331 and 1332.[3] It was the court's opinion, however, that because the state injunction had expired before appellant's case was heard, it was moot within the principles of Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), and Huseman v. Finch, 424 F.2d 1237 (10th Cir. 1970).

Appellant amended his complaint and asked for a declaratory judgment as provided in 28 U.S.C. § 2201.[4] His first amended complaint leveled several new charges on the constitutionality of Docket A–20, but nowhere were his jurisdictional arguments buttressed. The appellee vigorously challenged appellant's right to sue in federal court. Appellee charged there could be no recovery against the Commissioner of Agriculture individually as he was acting under color of state authority when he prohibited appellant from selling milk commodities in Colorado, and therefore cloaked with sovereign immunity. Appellee further argued that appellant in his pleadings had offered no facts showing damage in the requisite $10,000 jurisdictional amount. Appellant's original complaint alleged approximately $10,000 in lost gross profits but as gross profits are not a measure of damages, appellant had failed to surmount the jurisdictional hurdle.

The court was in agreement with appellee's contentions but allowed appellant to file a second amended complaint showing the requisite jurisdictional amount. Appellant introduced a new issue into the case in his second amended complaint. He charged his civil rights were being violated by the Commissioner of Agriculture in that he was not being treated equally with distributors living within the State of Colorado. Supporting this allegation appellant pointed out that Docket A–20 prohibited distributors living outside Colorado from voting for members of the Colorado Milk Board. Such discrimination was in violation of

---

3. 28 U.S.C. § 1331(a). The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1332(a). The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

    (1) citizens of different States;

    (2) citizens of a State, and foreign states or citizens or subject thereof; and

    (3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

4. 28 U.S.C. § 2201. In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 1343.[5] Appellant also pleaded in general allegations that his inability to sell milk or milk products in marketing area VI from August 23, 1971, to October 11, 1971, caused him to suffer the loss of his right to do business. No facts were presented showing what his damages were as a result of the injunction in market area VI.

Once again the district court felt jurisdictional requisites had not been properly alleged, but nevertheless appellant was allowed to file another amended complaint. In his third and final amended complaint appellant asserted several other forms of damages resulting from appellee's alleged illegal conduct. Besides lost profits and decrease in market value of his business, appellant charged he was out overhead expenses along with losing the use of his business property during the time he was enjoined from selling milk and milk products in Colorado. These general allegations were not supported by any facts showing the amount of damages. After reviewing the third amended complaint the lower court held appellant had failed to show facts sufficient to invoke jurisdiction. Utilizing as measure of damages the cost to appellant of complying with the order, the court found damages to be insufficient for jurisdictional purposes. City of Lawton, Oklahoma v. Chapman, 257 F.2d 601 (10th Cir. 1958). As appellant had been unable to show jurisdictional amount in three amended complaints, the court dismissed his complaint for want of jurisdiction.

Appellant on appeal presents two issues for consideration. He first charges that his complaint sufficiently alleges the jurisdictional amount as required by 28 U.S.C. §§ 1331–1332 and Rule 8, F.R. Civ.P.[6] His second issue is that damages may be measured by loss of the right to do business, loss of profits from a preexisting business, loss of market value in a preexisting business and/or loss of use of property. Whichever way his damages are measured, appellant asserts that he has proved his damages to be in excess of $10,000.

■■■ Generally speaking, under federal question and diversity cases all that is required in the allegations is that the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000. 1 Moore's Federal Practice, 0.-92 [1], p. 834 (2 ed. 1948). The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith. Ordering dismissal of an action in federal district court must therefore be based on a legal certainty that the claim is for less than the jurisdictional amount. Farmers Elevator Mutual Insurance Co. v. Jewett, 394 F.2d 896 (10th Cir. 1968); Branding Iron Club v. Riggs, 207 F.2d 720 (10th Cir. 1953). When dismissal for lack of jurisdictional

5. 28 U.S.C. § 1343. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

6. Rule 8, F.R.Civ.P. (a) Claims for relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.

(e) Pleading to be Concise and Direct; Consistency. (1) Each averment of pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(f) Construction of Pleadings. All pleadings shall be so construed as to do substantial justice.

amount also constitutes a decision on the merits, the court should be even more reluctant to dismiss the case. Jaconski v. Avisun Corp., 359 F.2d 931 (3d Cir. 1966).

■ ■ Although allegations in the complaint need not be specific or technical in nature,[7] sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor. Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971). Merely asserting an amount in controversy equal to the minimum sum required does not entitle appellant to sue in federal court. He must allege sufficient damages to assure the district court that the jurisdictional requirement has not been "thwarted by the simple expedient of inflating the complainant's *ad damnum* clause." Nelson v. Keefer, supra at 294.

■ ■ Once the jurisdictional amount is challenged the burden of proving jurisdiction is on the party asserting it. F & S Construction Co. v. Jensen, 337 F.2d 160 (10th Cir. 1964). And where the motion to dismiss states that it affirmatively appears from the allegations of the complaint that the requisite jurisdictional amount is not involved, the question of jurisdiction may be determined on the allegations of the complaint without the production of any evidence. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939). Such was the procedure used in the present case. Appellant was given three chances to amend his complaint and after each amendment appellee attacked the complaint for lack of jurisdiction. The trial court felt three chances at showing the jurisdictional amount was enough. We agree.

■ Appellant's third amended complaint merely alleges that the amount in controversy exceeds $10,000 exclusive of interest and costs. Nowhere does he attempt to show how he arrived at this amount. Instead he offers general statements such as lost profits resulting from the "illegal injunctions," decrease in market value of his business, continuing overhead expenses, and loss of the right to use his business property. These general allegations are insufficient when the other party challenges the legal sufficiency of the complaint. Appellant was charged with showing his damages and he failed to carry his burden. If we combine all his complaints together, the closest he has come to averring facts sufficient to prove jurisdiction is his assertion in the original complaint that he suffered loss of gross profits of approximately $10,000 for the four weeks he was enjoined from selling milk and milk products in Colorado. Gross profits, however, do not furnish the proper basis for measuring damages in cases such as the one confronting us. Lee v. Durango Music, 144 Colo. 270, 355 P.2d 1083 (1960).

Appellant is asking the federal district court to interpret Colorado's milk marketing regulations. Our court on a previous occasion held that when enforcement of state law is sought to be restrained by resort to the federal court, "the amount in controversy is to be determined by the damages which would result to the party requesting the injunction if he were required to comply with the statute or ordinance to carry on his business." City of Lawton, Oklahoma v. Chapman, supra 257 F.2d at 603–604. Nowhere do the allegations in appellant's amended complaints set forth any facts showing what the losses were from appellee's alleged wrongful conduct. Three times appellant was allowed to amend his complaint to be more specific, and three times the amended complaint alleged damages only in general terms.

Appellant failed to properly allege the requisite jurisdictional amount and therefore the lower court correctly dismissed his action for want of jurisdiction.

Affirmed.

7. Rule 8, F.R.Civ.P. (e) (1).