**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

WOODMEN OF THE WORLD LIFE
INSURANCE SOCIETY,

      Plaintiff - Appellant,

v.

ROSS MANGANARO; EDWARD J.
HOFER, JR.; PHILLIP ANAYA;
JOSEPH P. ANAYA; CECILIA
SANCHEZ,

      Defendants - Appellees.

No. 02-2040

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-01-763 RLP/LFG)**

---

Andrew G. Schultz, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque,
New Mexico (Walter T. Gilmer, Jr., Archibald T. Reeves, IV, McDowell, Knight,
Roedder & Sledge, L.L.C., Mobile, Alabama, with him on the briefs), for
Plaintiff-Appellant.

Anthony B. Jeffries, Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **SEYMOUR**, **PORFILIO**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Invoking diversity of citizenship jurisdiction, Woodmen of the World Life Insurance Society ("Woodmen") brought suit in the United States District Court for the District of New Mexico against insured members Ross Manganaro, Edward J. Hofer, Jr., Philip Anaya, Joseph P. Anaya, and Cecilia Sanchez (collectively "Defendants"). Woodman sought to compel Defendants to arbitrate claims they raised in a state court proceeding in accordance with Woodmen's Problem Resolution Procedure (the "Procedure"). Defendant Sanchez filed a motion to dismiss for lack of subject matter jurisdiction. The district court dismissed the suit, concluding that Woodmen's potential damages did not meet the jurisdictional amount of more than $75,000. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses**. Based upon the record before this court, it cannot be said to a legal certainty that the arbitration award would be less than the requisite jurisdictional amount.

## II.    BACKGROUND

Defendants are insured members of Woodmen, a non-profit fraternal benefit society which exists for the mutual benefit of its members and their beneficiaries. Woodmen operates through a representative form of government and provides many benefits to its members, including certificates of life insurance. The certificates of insurance issued to Woodmen members incorporate

Woodmen's "Constitution and Laws," which outlines the Procedure, a three-step alternative dispute resolution procedure. The Procedure requires Woodmen members to submit disputes to negotiation, mediation and, finally, arbitration. The Procedure authorizes an arbitrator to "award any and all damages or other relief allowed for the claim in dispute by applicable federal or state law, excluding attorneys' fees unless otherwise required by applicable law."

In 2001, Defendants filed a complaint against Woodmen in New Mexico state court, alleging: (1) breach of the duty of good faith and fair dealing; (2) breach of contract; (3) intentional or negligent concealment; and (4) unfair trade practice under New Mexico's Unfair Practices Act, N.M. Stat. § 57-12-3 (hereinafter "UPA"). Defendants sought class certification, compensatory damages, declaratory relief, treble damages under the UPA, exemplary damages, and "other and further relief to which [Defendants] may be entitled or which the Court may deem necessary, proper or just." Defendants also sought to enjoin Woodmen from charging and collecting additional premiums from policyholders who pay their premiums in increments rather than a single annual premium

> unless and until (a) [Woodmen] obtains those policyholders written agreement to pay such additional amounts for the option of paying periodically and (b) plainly discloses the various periodic payment options and related costs . . . so that the policyholders can make an informed choice as to which option is appropriate for them.

Defendants did not follow the three-step Procedure before filing their state lawsuit.

Invoking diversity of citizenship jurisdiction, Woodmen then filed separate suits against each of the Defendants in federal district court seeking to compel Defendants to comply with the Procedure by submitting the claims raised in their state court complaint to arbitration.[1] The district court ordered the cases consolidated for all purposes.

Sanchez filed a motion to dismiss Woodmen's complaint for lack of subject matter jurisdiction. In support of the motion, Sanchez attached an affidavit which claimed that the amount of damages she sought to recover was only $12,625.38. In response, Woodmen contended that the potential award of monetary damages and injunctive relief satisfied the requisite jurisdictional amount. Woodmen argued, *inter alia*, that to comply with the injunctive relief requested by Defendants, it would be required to send a mass mailing to all of its existing members. To support its assertion that the cost of complying with the injunctive relief itself would exceed $75,000, Woodmen attached an affidavit of one of its employees which noted that the cost of such a mass mailing would be $113,412.60.

---

[1]According to the district court, the state court action in this matter has been stayed.

The district court granted Sanchez's motion to dismiss. The district court's order also served as the order of dismissal for the Manganaro, Hofer, and two Anaya cases. In its order, the district court noted that only the amount in controversy was contested. The court determined, as Sanchez had argued, that Woodmen's cost of complying with any injunctive relief could be reduced by simply mailing the notices together with a billing. The court noted that Woodmen had not contended that printing costs alone would exceed $75,000. The court concluded that Sanchez had shown to a legal certainty that Woodmen's potential damages would not meet the jurisdictional amount.

## III.   DISCUSSION

This court reviews the grant of a motion to dismiss for lack of subject matter jurisdiction *de novo*. *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994). "When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover" the jurisdiction amount. *Id.* Thus, Woodmen, not Sanchez, has the burden of establishing jurisdiction. Woodmen can meet this burden by demonstrating that it is not legally certain that the claim is less than the jurisdictional amount. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000).

The legal certainty standard is very strict.[2] As a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 97-98 (1998). There is a strong presumption favoring the amount alleged by the plaintiff. *See Adams*, 225 F.3d at 1183 (noting that amount alleged in the complaint can alone be sufficient to satisfy showing that it is not legally certain the amount is less than the jurisdictional requirement); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." (quotation omitted)). Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction. 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 3d § 3702, at 98-101 (1998).

This case presents a situation where Woodmen's jurisdictional amount rests upon the claims asserted by Sanchez in her state court complaint. The Tenth Circuit has not addressed the appropriate means for determining the amount in

_____

[2]Certainty is defined as: "Absence of doubt; accuracy; precision; definite. The quality of being specific, accurate, and distinct." Black's Law Dictionary 225 (6th ed. 1990).

controversy in cases seeking to compel arbitration. This court, however, finds persuasive the holding of other circuits that "look through to the possible award resulting from the desired arbitration" to determine the amount in controversy. *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 160 (2d Cir. 1998) (quotation omitted); *see also The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997); *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). Accordingly, the requisite jurisdictional amount will be satisfied in a suit to compel arbitration unless it is legally certain that the stakes of the arbitration are $75,000 or less. *We Care Hair Dev., Inc. v. Engen*, 180 F.3d 838, 841 (7th Cir. 1999).

Woodmen argues that the district court erred in only considering injunctive relief to measure the amount in controversy and that the district court failed to consider damages alleged by Sanchez. Woodmen also argues that the court erroneously concluded that the cost of complying with the requested injunctive relief must be prorated among all Defendants. This court need not address Woodmen's second argument because we conclude it is not legally certain that the damages to be awarded in arbitration would be less than $75,000.[3]

---

[3]In its federal court complaint, Woodmen specifically asserted that, based on the claims asserted in Defendants' state court complaint, the relief available in arbitration could exceed $75,000.

In her state court complaint, Sanchez alleged breach of contract, breach of good faith and fair dealing, intentional or negligent concealment, and unfair trade practices. She sought compensatory damages, injunctive relief, treble damages, exemplary damages, and any other possible relief. In her affidavit in support of the motion to dismiss, Sanchez asserted that she was only entitled to compensatory damages of $4208.46. She then trebled the amount to compensate for the recovery of exemplary damages, resulting in the sum of $12,625.38. Although the district court referenced Sanchez's assertion that her monetary damages could not exceed $13,000, it concluded only that the cost to comply with any injunctive relief was not sufficient to meet the jurisdictional amount. Consideration of all types of monetary recovery sought by Sanchez in state court, however, establishes that it is not legally certain that the recovery would be less than $75,000.

Sanchez's unfair trade practices claim is premised on New Mexico state law. Under the UPA, a court may award a plaintiff "up to three times actual damages" if the trier of fact finds a willful violation. N.M. Stat. Ann. § 57-12-10(B). In addition, attorneys' fees and costs "shall [be] award[ed]" to a prevailing claimant. *Id*. § 57-12-10(C). Although Woodmen's "Constitution and Laws" generally precludes an arbitrator from awarding attorneys' fees, it permits an award of attorneys' fees if required by statute. *See also Missouri State Life*

-8-

*Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933) (stating that attorneys' fees may be used in calculating jurisdictional amount if statute allows such recovery). Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount.

Moreover, Sanchez sought punitive damages. Punitive damages may be considered in determining the requisite jurisdictional amount. *See Watson*, 20 F.3d at 386. Sanchez suggests that an arbitrator would be restricted to merely trebling of actual damages pursuant to section 57-12-10(B) of the UPA because, although she requested punitive damages in her state court complaint, she failed to allege sufficient facts in that complaint to support such an award. In addition to her UPA claim, however, Sanchez asserted several other common law claims, including intentional concealment.

Under the UPA, statutory damages are recoverable "in addition to remedies otherwise available against the same conduct under the common law." N.M. Stat. Ann. § 57-12-10(D). In *Hale v. Basin Motor Co.*, the New Mexico Supreme Court concluded that Section 57-12-10(D) allowed a prevailing claimant to be awarded treble damages under the UPA, as well as punitive damages if a separate common law theory of liability is proved. 795 P.2d 1006, 1012 (N.M. 1990). To

prevent double recovery, the party must then elect to accept either the award of treble damages or the compensatory plus punitive damages award. *Id.* If the party's combined award of compensatory and punitive damages is greater than the trebled damages under the UPA, the party has the option of taking the greater punitive damages award. *Id.*

In her state court complaint, Sanchez raised, *inter alia*, an intentional concealment claim. Further, she specifically prayed for punitive damages. Under New Mexico law, therefore, the arbitrator could award punitive damages if Sanchez prevails on her intentional concealment claim. *See Green Tree Acceptance, Inc. v. Layton*, 769 P.2d 84, 87 (N.M. 1989). Moreover, Woodmen's "Constitution and Laws" authorizes an arbitrator to award "any and all damages or other relief allowed for the claim in dispute by applicable federal or state law." Therefore, the stakes of the arbitration include a possible award of punitive damages against Woodmen for Sanchez's common law claims.

Furthermore, Defendants' complaint sought any "other and further relief" deemed proper and Woodmen's "Constitution and Laws" permits an arbitrator to award "any and all damages or other relief" for Sanchez's claims. Therefore, the arbitrator could award other damages as permitted by law on Sanchez's claims that were not specifically alleged in the complaint. *See We Care Hair Dev.*, 180

F.3d at 841 ("[I]t is the stakes of the arbitration and not the possible state court award that counts.").

This court concludes the district court erred in granting Sanchez's motion to dismiss for lack of subject matter jurisdiction because it failed to apply the legal certainty test to the full potential arbitration award in determining that the amount in controversy was less than the jurisdictional amount. Application of that test leads us to conclude that it is not legally certain an arbitrator would award less than $75,000 to Sanchez.

## IV. CONCLUSION

Based upon the foregoing reasons, this court **REVERSES** the district court's order dismissing the consolidated cases and **REMANDS** to the district court for further proceedings. Upon remand, the district court must determine, in accordance with this opinion, whether the stakes of arbitration between Woodmen and defendants Ross Manganaro, Edward J. Hofer, Jr., Philip Anaya, and Joseph P. Anaya would satisfy the amount in controversy.